UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LEIBOWITZ, BENJAMIN LEIBOWITZ, JASON LEIBOWITZ, AARON LEIBOWITZ, and PINCHAS GOLDSHTEIN,<br><br>                Plaintiffs,<br><br>     v.<br><br>IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER OPERATIONS LIMITED, TETHER LIMITED, TETHER INTERNATIONAL LIMITED, DIGFINEX INC., PHILIP G. POTTER, GIANCARLO DEVASINI, LUDOVICUS JAN VAN DER VELDE, REGINALD FOWLER, CRYPTO CAPITAL CORP., and GLOBAL TRADE SOLUTIONS AG,<br>                Defendants. | No. 19 Civ. 09236 (KPF)<br>ECF Case |
| ERIC YOUNG, ADAM KURTZ, and DAVID CRYSTAL on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER LIMITED, DIGFINEX INC., TETHER OPERATIONS LIMITED, TETHER INTERNATIONAL LIMITED, AND JOHN DOES 1-50,<br>                Defendants. | No. 20 Civ. 00169 (KPF)<br>ECF Case |

*[caption continued next page]*

**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOVANTS'
MOTIONS FOR INTERIM LEAD COUNSEL AND IN FURTHER SUPPORT
OF THE MOTION TO APPOINT KIRBY MCINERNEY LLP AND
THE RADICE LAW FIRM, P.C. AS INTERIM LEAD COUNSEL**

| | |
|---|---|
| BRYAN FAUBUS on behalf of himself and all others similarly situated,<br><br>                          Plaintiff,<br><br>      v.<br><br>IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER LIMITED, DIGFINEX INC., TETHER OPERATIONS LIMITED, TETHER INTERNATIONAL LIMITED, AND JOHN DOES 1-50,<br>                       Defendants. | No. 20 Civ. 00211 (KPF)<br>ECF Case |
| JOSEPH EBANKS, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>      v.<br><br>IFINEX INC., BFXNA INC., TETHER HOLDINGS LIMITED, TETHER LIMITED, TETHER OPERATIONS LIMITED, DIGFINEX INC., JEAN-LOUIS VAN DER VELDE, GIANCARLO DEVASINI and PHILIP POTTER,<br><br>                       Defendants. | No. 20 Civ. 00453 (KPF)<br>ECF Case |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 3

I.      Applicable Legal Standard................................................................................... 3

II.     The Kirby/Radice Team Should Be Appointed Interim Lead Counsel ............................ 4

        A.    Appointing the Kirby/Radice Team Interim Lead Counsel Will Promote the Effective and Efficient Prosecution of this Litigation ............ 4

        B.    The Relative Strength of the *Young* Complaint Supports the Appointment of the Kirby/Radice Team as Interim Lead Counsel ........... 6

        C.    Discretionary Factors Beyond Federal Rule of Civil Procedure 23(g)(1)(A) Support the Appointment of the Kirby/Radice Team as Interim Lead Counsel.............................................................................. 8

III.    The Kirby/Radice Team Offers the Most Compelling Leadership Application............... 11

        A.    The Newly Established RCF Firm's Leadership Application .................. 11

        B.    Robbins Geller's Leadership Application is Not as Compelling for *This* Litigation ........................................................................................ 14

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Deangelis v. Corzine*,
    286 F.R.D. 220 (S.D.N.Y. 2012) (Marrero, J.) ............................................................ 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006) .......................................................................... 4, 5

*In re Bear Stearns Cos., Inc. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    No. 08 M.D.L. 1963 (RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009), *amended on denial of
    reconsideration sub nom. In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No.
    08 M.D.L. 1963 (RWS), 2009 WL 2168767 (S.D.N.Y. July 16, 2009) ................................... 8

*In re Comverse Tech., Inc. Derivative Litig.*,
    No. 06 Civ. 1849, 2006 WL 3511375 (E.D.N.Y. Dec. 5, 2006) .............................................. 8

*In re Crude Oil Commodity Futures Litig.*,
    No. 11 Civ. 3600 (WHP), 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) ................................. 4, 5

*In re GSE Bonds Antitrust Litig.*,
    377 F. Supp. 3d 437 (S.D.N.Y. 2019) (Rakoff, J.) ...................................................... 6

*In re Interest Rate Swaps Antitrust Litig.*,
    No. 16 MD 2704 (PAE), 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) .................................... 4

*In re LIBOR-Based Fin. Instrument Antitrust Litig.*,
    No. 11 MD 2262 (NRB), 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ................................. 12

*In re Mun. Derivatives Antitrust Litig.*,
    252 F.R.D. 184 (S.D.N.Y. 2008) (Marrero, J.) ......................................................... 3, 4, 6, 12

*Nowak v. Ford Motor Co.*,
    240 F.R.D. 355 (E.D. Mich. 2006) ..................................................................... 12

*In re Parking Heaters Memorandum Antitrust Litig.*,
    310 F.R.D. 54 (E.D.N.Y. 2015) ......................................................................... 4

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    No. 05 MD 1720, 2006 WL 2038650 (E.D.N.Y. Feb. 24, 2006) ........................................... 4

*In re Treasury Sec. Auction Antitrust Litig.*,
    No. 15 MD 2673 (PGG), 2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017) .............................. 15

*Vale v. McGuinn*,
    No. 09 Civ. 3807 (RMB), 2009 WL 3297490 (S.D.N.Y. Oct. 13, 2009) ............................... 12

*Wallace v. Intralinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) (Griesa, J.) .......................................................... 15

**Other Authorities**

3 Herbert Newberg & Alba Conte, *Newburg on Class Actions* § 9.35 (4th ed. 2002) ................ 12

April Lambert, et al., *Library Patron Privacy in Jeopardy an Analysis of the Privacy Policies of Digital Content Vendors*, 52 Proceedings of the Association for Information Science and Technology 1 (2015) ............................................................................................... 10

Charles Silver, Class Actions-Representative Proceedings, 5 *Encyclopedia of L. & Econ. 194*, 221 (2000) ................................................................................................................. 6

Manual For Complex Litigation (Fourth) ................................................................................ 4

Masooda Bashir, April Lambert, Boyi Guo, Nasir Memon, and Tzipora Halevi, *Cybersecurity Competitions: The Human Angle*, 13 IEEE Security & Privacy 74 (2015) ...... 10

Masooda Bashir, Beth Strickland, and Jeremiah Bohr, *What Motivates People to Use Bitcoin?*, 10047 International Conference on Social Informatics 347 (2016) .......................................... 10

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 3, 4, 5

Plaintiffs Eric Young, Adam Kurtz, and David Crystal (collectively, the "*Young Plaintiffs*" or "Plaintiffs") respectfully submit this memorandum of law in opposition to motions filed by competing movants and in further support of their motion to appoint Kirby McInerney LLP ("Kirby") and the Radice Law Firm, P.C. ("Radice") (collectively, the "Kirby/Radice Team") as interim lead counsel.

## INTRODUCTION

There are presently three motions seeking the appointment of interim lead counsel in connection with the four Related Actions pending before this Court.[1]  Those motions were (or will be) filed by plaintiffs in the *Leibowitz*, *Young*, and *Ebanks* Actions.[2]

Plaintiffs' opening memorandum demonstrates that the Kirby/Radice Team is the most qualified to be appointed Interim Lead Counsel under Rule 23(g) of the Federal Rules of Civil Procedure.  This Court should appoint the Kirby/Radice Team as interim lead counsel, *inter alia*, because:

(i)     The Kirby/Radice Team developed the particularized allegations of the *Young* Complaint based on an in-depth pre-filing investigation of market participants and in consultation with experienced experts.  To wit, these allegations are readily

---

[1] The "Related Actions" refer to: (i) *Leibowitz et al. v. iFinex Inc. et al.*, No. 19 Civ. 9236 (S.D.N.Y.) (the "*Leibowitz* Action"); (ii) *Young et al. v. iFinex Inc. et al.*, No. 20 Civ. 169 (S.D.N.Y.) (the "*Young* Action"); (iii) *Faubus v. iFinex Inc. et al.*, No. 20 Civ. 211 (the "*Faubus* Action"); and (iv) *Ebanks v. iFinex Inc., et al.*, No. 20 Civ. 453 (S.D.N.Y.) (the "*Ebanks* Action").  Unless otherwise noted, all docket references are to the *Young* Action.  All references to "Defendants" are to Defendants in the *Young* Action, unless otherwise noted.  All references to "Opening Br." are to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Appoint Counsel.  *See* Pls.' Mem. In Supp. of Pls.' Mot. to Appoint Counsel, *Young et al., v. iFinex Inc. et al.*, 20 Civ. 169 (S.D.N.Y. Jan. 13, 2019) [ECF No. 25].

[2] *See* Notice of Mot. to Appoint Counsel, *Young*, 20 Civ. 169 (S.D.N.Y. Jan. 13, 2020) [ECF No. 24]; Mot. to Appoint Counsel, *Leibowitz*, No. 19 Civ. 9236 (S.D.N.Y. Jan. 3, 2020) [ECF No. 58] (the "RCF Br.").  Based on discussions with counsel for the *Ebanks* Action, Robbins Geller will file a motion to appoint interim lead counsel on January 27, 2020 pursuant to the Scheduling Order [ECF No. 29].

distinguishable from the public source allegations set forth in complaints filed by competing movants (*see* Section II.B, *infra*);

(ii)     The Kirby/Radice Team possesses unimpeachable qualifications and experience in the practice of antitrust and commodities litigation (*see* Section II.C.1, *infra*);

(iii)    The Kirby/Radice Team is unique in proposing a leadership structure that will promote diversity and inclusion (*see* Section II.C.2, *infra*); and

(iv)    The Kirby/Radice Team has secured the support of the *Faubus* Action, which is led by a law firm, Glancy Prongay & Murray LLP ("GPM"), similarly experienced in litigating claims asserted in the Related Actions (*see* Section II.A, *infra*).

Based on the foregoing, the Kirby/Radice Team is best positioned to serve as interim lead counsel. Discussions with counsel for the other Related Actions have remained collegial, even if those discussions have not resulted in a proposed private ordering to date. As such, if appointed interim lead counsel, the Kirby/Radice Team is confident that it will be able to work cooperatively with competing applicants to ensure that this litigation is prosecuted effectively and efficiently. *See* Section II.A, *infra*.

The competing leadership proposals submitted by counsel for the *Leibowitz* and *Ebanks* Actions are less compelling. For example, while the newly established law firm of Roche Freedman LLP (n/k/a Roche Cyrulnik Freedman LLP) ("RCF") filed the first of the Related Actions, the self-proclaimed significance of being "first-to-file" is overstated. *See* Section III.A, *infra*. The *Leibowitz* Complaint relies exclusively on publicly available information and *does not* reflect the same rigorous pre-filing investigation and econometric analysis as conducted by the Kirby/Radice Team. *See* Section II.B, *infra*. Likewise, in apparent recognition of its need for additional support in steering this litigation, RCF added California-based attorneys from the law firm of the Schneider Wallace Cottrell Konecky LLP ("SWCK") – which was not a signatory to the *Leibowitz* Complaint – to its interim lead counsel motion. In contrast, there is no reason to doubt that the Kirby/Radice Team, whose lawyers have decades of experience prosecuting

claims on behalf of investors and consumers in this District and both of whom are headquartered in New York and New Jersey, will bring their extensive class action litigation experience and financial resources to bear in this litigation.

Similarly, the leadership application submitted by Robbins Geller is unavailing. Robbins Geller's track record is not disputed, but the firm has not demonstrated the same commitment to *this* litigation as the Kirby/Radice Team. Further, even though Robbins Geller initially sought to represent a class of bitcoin purchasers (*see* Compl. at ¶ 106, *Ebanks*, No. 20 Civ. 453 (S.D.N.Y. Jan 16, 2020) [ECF No. 1]), this argument glosses over the fact that plaintiffs in the *Young* and *Faubus* Actions are also bitcoin purchasers. *See* Section III.B, *infra*. In any event, Robbins Geller subsequently conceded that the Related Actions should be consolidated. Rudman Ltr. Regarding Consolidation, *Ebanks*, No. 20 Civ. 453 (S.D.N.Y. Jan. 24, 2020) [ECF No. 8]. Likewise, arguments concerning purported intra-class conflicts are premature and unfounded at this early stage of the litigation. *See* Section III.B., *infra*.

Accordingly, appointing the Kirby/Radice Team as Interim Lead Counsel will best serve the interests of all class members, while promoting efficient and effective leadership for this litigation. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (Marrero, J.) ("Rule 23(g)(2) provides that the court 'must appoint the applicant best able to represent the interest of the plaintiffs.'").

## ARGUMENT

## I.    Applicable Legal Standard

Federal Rule of Civil Procedure 23 provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). In cases such as this, where there is more than one application for appointment as class counsel, the Court should appoint the applicant "best able to

represent the interests of the class." Fed. R. Civ. P. 23(g)(2); *see* Opening Br. at Section II.  To this end, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

II.     **The Kirby/Radice Team Should Be Appointed Interim Lead Counsel**

      A.     **Appointing the Kirby/Radice Team Interim Lead Counsel Will Promote the Effective and Efficient Prosecution of this Litigation**

Courts routinely appoint interim lead counsel in cases of similar magnitude and complexity to ensure that the litigation is managed.  *See* Manual For Complex Litigation (Fourth) ("Manual") §§10.22, 21.11; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).  In addition, courts in this District routinely appoint co-lead counsel as interim lead counsel in complex antitrust and commodities litigations to represent the interests of the class.  *See In re Interest Rate Swaps Antitrust Litig.*, No. 16 MD 2704 (PAE), 2016 WL 4131846, at *4 (S.D.N.Y. Aug. 3, 2016) (collecting cases and observing that "appointing two interim co-lead counsel is most likely to produce efficient and effective representation."); Order Appointing Counsel, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS) (S.D.N.Y. Aug. 13, 2015) [ECF No. 412] (appointing two interim lead counsel)[3] *and see* Manual §10.221 (noting that the most important factor in appointing organizational structure is "achieving efficiency and economy without jeopardizing fairness to the parties").

---

[3] *See, e.g.*, *In re Mun. Derivatives*, 252 F.R.D. at 187 (appointing co-lead firms as interim class counsel); *Air Cargo*, 240 F.R.D. at 58 (same); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05 MD 1720, 2006 WL 2038650, at *5 (E.D.N.Y. Feb. 24, 2006) (same); *In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600 (WHP), 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012) (same); *In re Parking Heaters Memorandum Antitrust Litig.*, 310 F.R.D. 54, 59 (E.D.N.Y. 2015) (same).

Here, the proposed Kirby/Radice Team readily satisfies all of the criteria set forth in Fed. R. Civ. P. 23(g)(1)(A), which identifies four factors that courts are to consider in appointing class counsel: (i) the work that counsel has done in investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See* Opening Br. at Section II.

For this reason, the Kirby/Radice Team respectfully submits that a leadership structure with their firms at the top will be the most efficient and effective. Indeed, in recognition of the Kirby/Radice Team's early leadership in this litigation, plaintiff's counsel for the *Faubus* Action, GPM, supports the Kirby/Radice Team's appointment as interim lead counsel. *See In re Crude Oil*, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012) (giving "some weight to plaintiffs' 'self selection' of class counsel.") (citation omitted); *Air Cargo*, 240 F.R.D. at 58 (noting the fact that "experienced counsel are satisfied to be represented by these two competing applicants is some measure of the respect they command and the confidence of their peers that they will serve well in the role").

Last, even if discussions with competing movants' counsel have not resulted in private ordering to date, the discussions have remained collegial. As such, the Kirby/Radice Team is confident that it will be able to work cooperatively with other counsel to ensure that this litigation is prosecuted fairly, efficiently, and economically. *See In re Crude Oil*, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012) (noting that interim co-lead counsel "may divide case responsibilities and costs as they see fit among any of the fine law firms who have competed to be interim lead counsel"). The Kirby/Radice team also respectfully submits that Kirby should be appointed primary plaintiffs' liaison to the Court based on the firm's role in developing the most

particularized allegations, track record of success in litigating antitrust/commodities claims, and role in attempting to coordinate the Related Actions. *See* Order Appointing Interim Co-Lead Counsel, *Binz v. Amadeus IT Group, S.A.*, No. 15 Civ. 5457 (KPF) (S.D.N.Y. Dec. 7, 2015) [ECF No. 144] (appointing interim co-lead counsel, but appointing a single law firm to act "as liaison counsel on behalf of all Plaintiff's counsel for purposes of providing a single point of contact for the Court and for defense counsel").

### B.   The Relative Strength of the *Young* Complaint Supports the Appointment of the Kirby/Radice Team as Interim Lead Counsel

Courts in this District weigh the relative strength of initial complaints in evaluating interim lead counsel motions. *See In re Mun. Derivatives*, 252 F.R.D. at 186 (weighing various firms' "proffered investigative efforts" and appointing as interim lead counsel the firms that "expended substantially more effort and resources and obtained more substantial and more valuable and reliable information."); *see also In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (Rakoff, J.) (appointing interim co-lead counsel who "did substantial investigative work and invested significant resources").[4]

Here, each of the Related Actions were filed in response to an academic article describing Defendants' alleged manipulation of the bitcoin market. However, the Kirby/Radice Team performed a far more thorough investigation that resulted in a complaint substantively different from, and superior to, the complaints filed by the competing movants' counsel. Competing counsel clearly did not undertake the same in-depth, independent investigation. In its opening submission, RCF remarks that the *Young* Complaint is "nearly identical" to the *Leibowitz*

---

[4] *Cf.* Charles Silver, Class Actions-Representative Proceedings, 5 *Encyclopedia of L. & Econ. 194*, 221 (2000) ("[u]nless lawyers are compensated for time spent inventing liability theories and investigating misconduct, they will be discouraged from doing so").

Complaint.  *See* RCF Br. at 7.  This is untrue.  The fact that the *Young* Complaint includes allegations that are, *in part*, based on the same publicly available information as the *Leibowitz* Complaint is hardly surprising—this is the nature of pre-discovery factual investigation which must be developed from publicly-available sources.  Competing movants do not deny that the quantitative analysis included in the *Young* Complaint is the result of a unique and resource-intensive engagement undertaken by the Kirby/Radice Team with industry experts.

The *Young* Complaint's unique factual allegations underscore that superficial, self-serving comparisons should be discounted.  As detailed in the Opening Brief (*see* Section II. A), the unique pre-filing work of the Kirby/Radice Team included:

- Developing a proprietary algorithm and identifying, for the first time, specific dates of Defendants' manipulation of Bitcoin, *see Young* Compl. ¶¶ 137-39;

- Developing a proprietary systematic mapping of the trading flow of newly issued tethers and identifying over 236 specific manipulative transactions, *see id.* at ¶¶ 107-18, 140-48;

- Identifying Defendants' manipulation on at least 115 different occasions, *see id.* at Table 3, including intermediary wallets that Defendants potentially used for wash trading, *see id.* at ¶¶ 107-18;

- Performing rigorous regression analyses evidencing that Defendants liquidated their Bitcoin holdings to replenish their U.S. dollars holdings and perpetuate their systematic manipulation, *see id.* at ¶ 133; and

- Performing various regression analyses demonstrating the lockstep statistical relationship between Bitcoin and Bitcoin futures and identifying specific occasions of Defendants' manipulation and mean/median pricing impact on Bitcoin futures, *see id.* at ¶¶ 172-74, 179-87, Figures 31-34.

Competing movants' complaints do not contain the same level of detail and development of allegations of manipulation and show that they have neither undertaken significant efforts to identify factual or statistical allegations particularized to exchange-based Bitcoin traders nor demonstrated leadership on behalf of exchange-based Bitcoin traders.  *See generally Leibowitz*

Complaint (omitting (i) any mention of relevant Bitcoin futures exchanges, (ii) a description of Bitcoin futures or futures generally, and (iii) the relationship between Bitcoin and Bitcoin futures); *see also Ebanks* Complaint (lacking reference to any Bitcoin derivative markets, or the impact of manipulation on such markets).   In contrast to this dearth of allegations specific to exchange-based class members, the Kirby/Radice Team undertook extensive original expert and statistical analyses for *all* class members, including exchange-based class members, resulting in a complaint containing particularized allegations and independent economic analyses of a magnitude unsurpassed by competing movants.  *See In re Comverse Tech., Inc. Derivative Litig.*, No. 06 Civ. 1849, 2006 WL 3511375, at *4 (E.D.N.Y. Dec. 5, 2006) (affirming magistrate's appointment of lead counsel on grounds that their complaint contained a "superior factual backdrop").

### C.  Discretionary Factors Beyond Federal Rule of Civil Procedure 23(g)(1)(A) Support the Appointment of the Kirby/Radice Team as Interim Lead Counsel

#### 1.  The Kirby/Radice Team's Experience with Complex Financial Product Antitrust Litigation Supports Appointment as Interim Lead Counsel

In evaluating interim lead counsel applications in complex financial antitrust and commodities litigation, courts in this District credit the unique experience of attorneys with "substantial commodities futures experience of their own – as both lawyers and businesspeople." *See Deangelis v. Corzine*, 286 F.R.D. 220, 224 (S.D.N.Y. 2012) (Marrero, J.).[5]  As set forth in the opening brief, *see* Opening Br. at Section II.B, Kirby and Radice have been appointed

---

[5] *See also In re Bear Stearns Cos., Inc. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 08 M.D.L. 1963 (RWS), 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009), *amended on denial of reconsideration sub nom. In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No. 08 M.D.L. 1963 (RWS), 2009 WL 2168767 (S.D.N.Y. July 16, 2009) (finding counsel's experience in and knowledge of applicable law to be persuasive when choosing lead counsel) (citations omitted).

interim and lead counsel, co-lead, and plaintiffs' counsel in multiple antitrust and commodities class actions with similar claims, which have resulted in landmark settlements. For example, Kirby currently serves as interim co-lead counsel for the Exchange-Based Action in connection with the LIBOR multi-district litigation and has negotiated partial settlements, totaling $187 million to date, which represent the largest recovery on behalf of a futures class. *See* Opening Br. at Section II.B. Likewise, Kirby and Radice each served as class counsel (with Kirby providing special fiduciary representation for the exchange-based class) in connection with *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13 Civ. 7789 (LGS) (S.D.N.Y.). That case has resulted in recoveries totaling $2.3 billion to date. *See* Opening Br. at Sections II.B, III.

In addition, David Kovel, the head of Kirby's antitrust and commodities litigation practice, and John Radice, the founder of the Radice Law Firm, both worked as professional traders prior to pursuing their legal careers, which provides them with unique market insight. *See* Opening Br. at Section II.B. The Kirby/Radice Team respectfully submits that the depth of their collective experience litigating complex financial product antitrust cases qualifies their firms to serve as interim lead counsel. *See* Opening Br. at II.B.

### 2. The Kirby/Radice Team Promotes Diversity, Inclusion, and Opportunity

In reviewing leadership applications in complex class action litigation, courts increasingly consider whether a proposed leadership team demonstrates a commitment to diversity and the potential to provide substantive work for junior attorneys. *See, e.g.*, Tr. of Proceedings at 13-15, *In re Chi. Board Options Exch. Volatility Index Manipulation Antitrust Litig.*, No. 18 Civ. 4171 (N.D. Ill. July 11, 2018) [ECF No. 48] (setting forth criteria for interim leadership applications).

The Kirby/Radice Team respectfully submits that its leadership application uniquely addresses these considerations. The Kirby/Radice Team is the only proposed Interim Lead Counsel that would place experienced women litigators in leadership positions. If appointed interim lead counsel, attorneys Karen Lerner at Kirby, and April Lambert and Natasha Fernandez-Silber at Radice, will be significantly involved in prosecuting the claims against Defendants and arguing motions before this Court. Each brings relevant experience to this litigation. With a background in defense work, Ms. Lerner is known for cooperatively working with counsel for all parties to effectively advance the litigation on behalf of her clients. At Kirby, Ms. Lerner has been at the forefront of cutting-edge commodities/antitrust litigation against leading financial institutions, including expertise in negotiating and analyzing transactional data from defendants and third-party futures exchanges. Likewise, Ms. Lambert will be leading the effort on behalf of the Radice firm. Ms. Lambert has been on the trial teams for two high-stakes antitrust cases that settled recently on the eve of trial[6] and has published on the issues of cybersecurity and privacy.[7] In addition, as a graduate student, Ms. Lambert conducted research into the adoption and use of cryptocurrencies and the sociopolitical characteristics of Bitcoin users.[8] As set forth in the Kirby/Radice Team's opening brief and supporting papers, this litigation team will draw upon a talented team of litigators at both firm

---

[6] *In re Loestrin 24 Fe Antitrust Litig.*, No. 13 MD 2472 (D.R.I.); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14 MD 02503 (D. Mass.).

[7] *See, e.g.*, Masooda Bashir, April Lambert, Boyi Guo, Nasir Memon, and Tzipora Halevi, *Cybersecurity Competitions: The Human Angle*, 13 IEEE Security & Privacy 74 (2015); April Lambert, et al., *Library Patron Privacy in Jeopardy an Analysis of the Privacy Policies of Digital Content Vendors*, 52 Proceedings of the Association for Information Science and Technology 1 (2015).

[8] Designed and collaborated on research that was published as Masooda Bashir, Beth Strickland, and Jeremiah Bohr, *What Motivates People to Use Bitcoin?*, 10047 International Conference on Social Informatics 347 (2016).

who have successfully represented investors and consumers in complex financial antitrust litigation. *See* Exs. A-B, Decl. of Karen M. Lerner in Supp. of Mot. to Appoint Counsel [ECF Nos. 26-1-26-2].

Consistent with Rule 3.D of this Court's Individual Practices, the Kirby/Radice Team is also committed to ensuring that junior attorneys receive valuable litigation experience through participation in pre-trial proceedings. This is not an empty promise. In connection with an antitrust action alleging manipulation of the silver futures market by J.P. Morgan, Anthony Maneiro, a Kirby associate, was tasked with arguing a motion to exclude expert testimony. *See* Tr. of Proceedings, *Shak v. JPMorgan Chase & Co.*, 15 Civ. 992 (PAE) (S.D.N.Y. Nov. 2, 2018) [ECF No. 243] (case stayed during pendency of criminal proceedings against percipient J.P. Morgan witnesses). Here, Mr. Maneiro's understanding of market dynamics has already informed his research and drafting of the *Young* Complaint and our continuing assessment of the theories and impact on investors. Radice is similarly committed to this effort. For example, Ms. Fernandez-Silber is an integral part of the *Intuniv Antitrust Litigation*, No. 16 Civ. 12653 (D. Mass.), trial team and has been deeply involved in depositions and expert work in that and other matters. Accordingly, if appointed Interim Lead Counsel, the Kirby/Radice Team will continue their ongoing commitment to diversity and inclusion while serving the best interests of the putative class.

## III.     The Kirby/Radice Team Offers the Most Compelling Leadership Application

For the reasons set forth below, the Kirby/Radice Team respectfully submits that the competing interim lead counsel motions simply are less compelling than its own application.

### A.     The Newly Established RCF Firm's Leadership Application

The newly established RCF law firm's leadership application rests on a weak foundation. Principally, RCF argues that being "first-to-file" carries outsized significance. This argument is

spurious.  Courts in this district recognize that "[w]hether someone was 'first to file' by itself has little to do with who is the best qualified to lead the case, and . . . [t]o hold otherwise would further encourage a 'rush to the courthouse' in . . . class action cases." *Vale v. McGuinn*, No. 09 Civ. 3807 (RMB), 2009 WL 3297490, at *4 (S.D.N.Y. Oct. 13, 2009) (quoting *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 365 (E.D. Mich. 2006)); *see also* 3 Herbert Newberg & Alba Conte, *Newburg on Class Actions* § 9.35 (4th ed. 2002) ("The first attorney to file is not entitled to special consideration for appointment as lead counsel simply by winning the race to the courthouse."); *see also In re LIBOR-Based Fin. Instrument Antitrust Litig.*, No. 11 MD 2262 (NRB), 2011 WL 5980198, at *3 (S.D.N.Y. Nov. 29, 2011) (appointing Kirby as interim co-lead counsel and holding that the fact that various firms filed first was not a determinative factor).

Consistent with Rule 23(g)(1)(A)(i), this Court should look past the commencement date of the *Leibowitz* Action and consider the actual work performed by RCF when evaluating its application.  RCF does not deny, nor can it, that its complaint borrows heavily from an academic study claiming that Defendants manipulated the price of bitcoin.  *See Leibowitz* Compl. ¶¶ 118-36.  Seeking credit for being first-to-file a complaint that recites public information and repackages academic literature is suspect under any circumstance, but it is particularly questionable here, given the inherent challenges and complexities of pleading antitrust and commodities claims.  In contrast, the Kirby/Radice Team invested the time and resources to developed well-pled, particularized allegations supported by rigorous independent expert quantitative analysis that expands upon the academic study relied upon by RCF.  *See* Section II.B, *supra.*  The Kirby/Radice Team respectfully submits that this type of extensive pre-filing investigation demonstrates true leadership.  *See In re Mun. Derivatives*, 252 F.R.D. at 186 (in considering "work done by counsel in identifying and investigating potential claims in this

action, the Court finds that the work done by the Firms weighs in favor of their appointment as interim lead counsel").

*Second*, RCF overstates its role in prosecuting claims to date.  *See* RCF Br. at 2 ("Since being the first-to-file, Plaintiffs have diligently prosecuted their case and caused it to advance much farther [sic] along from a procedural standpoint").  Serving a complaint and negotiating a vacated briefing schedule is not particularly noteworthy.  *Id.* at 2-3.  In any event, the Kirby/Radice Team has also effectuated service of the *Young* Complaint through defense counsel, without incurring the expense of service.  Stipulation, *Young v. iFinex Inc.*, No. 19 Civ. 1902 (W.D. Wa. Jan. 2, 2020) [ECF No. 10] ("Defendants shall accept service of process in the Southern District of New York").  Further, the Kirby/Radice Team worked together with RCF to secure an agreement from defense counsel to postpone briefing on motion(s) to dismiss until this Court selected interim lead counsel and set a schedule for filing an amended consolidated complaint.  *See* [Proposed] Scheduling Order [ECF No. 27-1].

Finally, in apparent recognition of its limited experience, RCF included California-based attorneys from SWCK in its interim lead counsel motion.  RCF's opening brief does not explain what role, if any, SWCK played in developing the publicly sourced allegations of the *Leibowitz* Complaint.  Because SWCK only first appeared in the *Leibowitz* Action after RCF performed certain perfunctory case initiation exercises, it is unclear what credit, if any, SWCK deserves for those tasks as well.  In any event, SWCK does not purport to bring any unique litigation skills to bear.  Even though that firm has experience litigating class actions, SWCK's lack of demonstrable commitment to *this* litigation is obvious in comparison to that already demonstrated by the Kirby/Radice Team.

**B.     Robbins Geller's Leadership Application is Not as Compelling for *This* Litigation**

The Kirby/Radice Team submits that it is better positioned to serve as interim lead counsel in this case compared to Robbins Geller.  The Kirby/Radice Team does not dispute Robbins Geller's track record of success in general.  In the context of *this* litigation, however, the Kirby/Radice Team respectfully submits that the *Ebanks* Complaint filed by Robbins Geller does not reflect the same level of pre-filing investigation as the *Young* Complaint that Kirby/Radice Team originally filed a month earlier.  *See* Section II.B, *supra*; Opening Br. at Section II.A.  Of course, the Kirby/Radice Team remains willing to work collaboratively with Robbins Geller in prosecuting the common claims asserted in the *Young* and *Ebanks* Actions.

The ability of the Kirby/Radice Team to work collaboratively with Robbins Geller is simplified now that the Court has consolidated the Related Actions.[9]  While the *Ebanks* Action asserts claims solely on behalf of bitcoin purchasers, the *Young* Action covers those who transacted in bitcoin and bitcoin futures during the proposed class period.  The *Young* Complaint already adequately establishes that Defendants' alleged manipulation directly (and consistently) impacted investors who transacted in bitcoin and bitcoin futures during the proposed class period.  Recent caselaw in this District confirms that there is no immediate actual conflict within a proposed class covering "physical" and "futures" traders that would require this Court to sever class into factions at the pleading stage and to assign litigation responsibility for particular

---

[9] On the day following the commencement of the *Ebanks* Action, Robbins Geller filed a letter to the Court setting forth its intention to move to be appointed interim class counsel on behalf of a class of bitcoin purchasers and stated its intention to file a letter outlining its view on consolidation.  Rudman Ltr. re Consolidation & Interim Class Counsel, *Ebanks*, No. 20 Civ. 453 (S.D.N.Y. Jan. 17, 2020) [ECF No. 6].  Subsequently, Robbins Geller filed a letter consenting to the consolidation of the Related Actions.  *See* Rudman Ltr. re Consolidation, *Ebanks*, No. 20 Civ. 253 (S.D.N.Y. Jan. 24, 2020) [ECF No. 8].

groups of class members. *See* Mem. Order at 3, *In re Gold Fixing Antitrust and Commodity Exch. Act Litig.*, 14 Civ. 1459 (VEC) (S.D.N.Y. June 16, 2014) [ECF No. 19] (denying sub-classes and finding that "[t]o be sure, some differences may exist between some of the putative class members . . . [but] [t]o create putative subclasses before these potential conflicts develop places the cart before the horse at great expense to all class members."); *In re Treasury Sec. Auction Antitrust Litig.*, No. 15 MD 2673 (PGG), 2017 WL 10991411, at *3 (S.D.N.Y. Aug. 23, 2017) (rejecting request to separate physical market claims from "futures" claims and observing "[t]hat claims brought under the Sherman Act and the Commodity Exchange Act contain separate elements does not mean that a conflict between class members exists").[10]

Accordingly, at this preliminary stage of the litigation, the Court should establish a leadership structure with the Kirby/Radice Team as Interim Lead Counsel.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court consolidate the Related Actions and appoint Kirby McInerney LLP and the Radice Law Firm, P.C. as Interim Co-Lead Counsel for the Related Actions.

---

[10] *See also* Order, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 13 Civ. 7789 (LGS) (S.D.N.Y. Aug. 13, 2015) [ECF No. 412] (appointing counsel to represent an over-the-counter class and exchange-based class); *Wallace v. Intralinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014) (Griesa, J.) (appointing single lead counsel to represent both class and subclass).

Dated: January 27, 2020 **KIRBY MCINERNEY LLP**

_/s/ Karen M. Lerner_
David E. Kovel
Karen M. Lerner
Thomas W. Elrod
Anthony E. Maneiro
250 Park Avenue, Suite 820
New York, New York 10177
Telephone: (212) 371-6600
Email: dkovel@kmllp.com
klerner@kmllp.com
telrod@kmllp.com
amaneiro@kmllp.com

**RADICE LAW FIRM, P.C.**

_/s/ John Radice_
John Radice
April Lambert
Natasha Fernandez-Silber
475 Wall Street
Princeton, New Jersey 08540
Telephone: (646) 245-8502
E-mail: jradice@radicelawfirm.com
alambert@radicelawfirm.com
nsilber@radicelawfirm.com

_Counsel for Plaintiffs Eric Young, Adam Kurtz,
and David Crystal_